UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

CHRISTOPHER T. BROWN,

                              Plaintiff,

- against -

CATHOLIC CHARITIES OF NYC/BEACON OF HOPE HOUSE,

                              Defendant.

MEMORANDUM AND ORDER

12-cv-05875 (JG)

A P P E A R A N C E S

    By:    Christopher T. Brown
            476 Richmond Terrance Apt. 7J
            Staten Island, NY 10301
            *Pro Se Plaintiff*

            PUTNEY, TWOMBLY, HALL & HIRSON LLP
            521 Fifth Avenue
            New York, NY 10175
    By:    Robert Tucker
            *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Christopher T. Brown ("Brown") commenced this action against his former employer, the Catholic Charities Community Services, Archdiocese of New York ("CCCS")[1], under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). Brown alleges that the CCCS discriminated against him on the basis of his race, and sex and retaliated against him for questioning his supervisor's authority. Am. Compl. at 3. CCCS moves to dismiss Brown's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). I heard oral argument on July 24, 2013. For the reasons stated below, the motion is granted.

---

[1] Brown incorrectly named the defendant as Catholic Charities of NYC, Beacon of Hope House.

## BACKGROUND

### A. Factual Allegations

Brown's amended complaint sets forth the following factual allegations, which I accept as true for the purposes of deciding this motion. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Starting in November 2010[2] and ending on February 1, 2012, Brown was employed on a per diem basis by CCCS. Am. Compl. at 4; Def. Opp. at 5. Brown was an exemplary employee and, for the first several weeks after he was hired, he received positive feedback from his peers. Am. Compl. at 10. However, on his first day of work Brown was given an overview of his responsibilities by one of his supervisors, Tiah Balcer. *Id.* at 6. He was told to read the daily log book "for the past seven days" in order to familiarize himself with what was going on with the residents of the facility in which he worked. Brown thought this was odd based on his prior experience with other employers[3], who required that the log book be read for only the last two or three days. *Id.* As a result, as Brown states in his complaint, he "immediately. . . felt Tiah, a white female much younger than myself was insulting my intelligence." *Id.*

Brown was asked to perform additional tasks that he claims were outside his job description but which he nonetheless completed satisfactorily. *Id.* at 7. He alleges that even though Balcer had her own office, she spent her time in the staff's office. *Id.* She would also assign additional tasks to Brown before he was able to complete the task he was working on. Brown found this to be "very annoying" and, in his mind, a hostile work environment. *Id.*

Within two to three months of the commencement of his employment with CCCS, Brown was approached by one of his supervisors, Richard Omega. *Id.* at 8. Omega asked

---

[2] The amended complaint alleges that Brown's employment began in November 2011; however, at oral argument, Brown stated that his employment commenced in November 2010, which is consistent with the date he provided in his administrative complaint.

[3] Brown previously held similar employment with the Services for the Underserved. *See Brown v. Servs. for the Underserved*, 12-cv-0317, 2012 WL 3111903 (E.D.N.Y. Jul. 31, 2012).

2

Brown if he minded helping out with a food delivery. *Id.* at 8. Brown responded that he was taking care of other affairs and could not understand why other staff members could not help out with the food delivery. He added that the company making the delivery had a driver and a helper, and it was that company's responsibility to unload the delivery. *Id.* at 8.

Brown called the main office and spoke with Joy Jaspher, the Director of Human Resources, who told Brown that helping with the food delivery was indeed outside of his job description. *Id.* at 9. Thereafter, Brown was called into Omega's office for a conference about the incident. *Id.* at 9. Denise Samone, the site director, Balcer and Omega were present. *Id.* at 9. Brown was unjustly reprimanded by Balcer and Samone, while Omega stood by idly. *Id.* at 9. Three days later, Brown was called into Balcer's office, and she told Brown that his services were no longer needed. *Id.* at 9. Thus, Brown alleges, a result of questioning Balcer's authority, he was relieved of his duties. *Id.* at 10.

Brown was terminated on February 1, 2012. He alleges that "given the events that occured (sic) prior [to] this, that logically I was let go of cause I questioned Tiah who at the time was not my supervisor and is white. She then sought to retaliate against me by dening (sic) me the right to work and support my family." *Id.* at 10. In sum, Brown contends that CCCS discharged him because of his race, national origin, and gender and retaliated against him in violation of Title VII.

### B. Procedural History

Brown filed his original complaint against CCCS on November 23, 2012. (ECF No. 1). On February 15, 2013, I issued an order dismissing the complaint but granting Brown leave to replead. (ECF No. 4). Brown filed his amended complaint against CCCS on March 15, 2013. (ECF No. 5). On June 6, 2013, CCCS filed the present motion to dismiss the amended

complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Def. Mot. Dismiss Compl. (ECF No. 12); *see also* Def. Mem. in Support (ECF No. 15).

DISCUSSION

    *A.*    *Standard of Review*

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, a court need not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a party does not "nudge[][his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

    *B.*    *Brown's Claim of Discrimination*

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

A plaintiff sustains an "adverse employment action" when he or she endures a materially adverse change in terms and conditions of employment. Among the actions that qualify as "materially adverse" are termination of employment, demotion evidenced by decrease in wage or salary, less distinguished title, material loss of benefits, or significantly diminished material responsibilities. *Galabya v. N.Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

A plaintiff need not plead all facts necessary to establish a *prima facie* case, but must satisfy Fed. R. Civ. P. 8 by making "a short and plain statement of claim" illustrating that he is entitled to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Twombly*, 550 U.S. at 547 (explicitly affirming the *Swierkiewicz* pleading standard for employment discrimination cases).

There is no dispute that Brown belongs to a protected class and CCCS does not argue that Brown was not qualified for his position. And Brown plainly alleges an adverse employment action – he was fired from his job. However, he does not allege any facts or circumstances that suggest an inference of discrimination.

Brown's allegations consist of the following:

- On his first day on the job, he and another black male employee were assigned the task of "dealing" with bed bugs. Am. Compl. at 6-7.
- He was "not qualified in pest control" and was not hired for this task, yet he did it anyway without question. *Id.* at 7.
- He was asked by his supervisor, Richard Omega, a black male, to assist with a food truck delivery; he subsequently questioned Joy Jasper, the Human Resources

5

- Director, a black female, who confirmed assisting in a food truck delivery was outside of his employment duties. *Id.* at 8-9.
- His termination resulted from his questioning Balcer's authority, a white female, who was not his supervisor at the time. *Id.* at 10.
- He got fired after declining to do work that fell outside of his job description. *Id.*

Construing these allegations in light most favorable to Brown, the facts do not give rise to an actionable claim under Title VII. Brown has not alleged any facts that would, if proven, establish that he was discriminated against because of his race, gender or sex. His claims arise from allegations that he was treated unfairly, but Title VII does not address the sort of unfairness of which he complains. Because the facts Brown alleges do not assert a plausible claim of the invidious discrimination prohibited by Title VII, his amended complaint does not satisfy the pleading standards articulated in *Twombly* and *Iqbal* and must therefore be dismissed in their entirety.

### C. Brown's Retaliation Claim

#### 1. The Failure to Exhaust the Claim

Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing a charge with the Equal Employment Opportunity Commission ("EEOC") or an equivalent state or city agency. 42 U.S.C. § 2000e-5(e); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (holding that exhaustion is not a jurisdictional prerequisite but an "essential" precondition to bringing a Title VII claim in federal court). The exhaustion requirement is relaxed under the "reasonably related" doctrine if, among other things, the retaliation Brown complains would have fallen within the scope of the investigation that would reasonably be expected to grow out of the charge in his administrative

complaint. *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008); *see also Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003).

Brown filed an administrative complaint alleging race, national origin and sex discrimination[4] with the New York State Division of Human Rights ("SDHR"), on April 16, 2012, which was filed with the EEOC. Brown did not allege retaliation in the administrative complaint and the complaint did not contain any allegations of protected activity. On August 10, 2012, the SDHR issued a Determination and Order After Investigation, dismissing the administrative complaint because it found no probable cause to believe that CCCS engaged in any unlawful discriminatory practices. On September 21, 2012, the EEOC a right-to-sue letter notifying Brown that the EEOC had adopted the findings of the SDHR.

Brown commenced the instant action on November 23, 2012. In his complaint, Brown checked a box indicating that the action is brought pursuant to Title VII. Brown also checked boxes indicating that CCCS had terminated his employment on the basis of his race and sex and that CCCS engaged in retaliation. It is true that the investigation of a single allegation of retaliation could reasonably be expected to inquire into other instances of alleged retaliation. Similarly, a pre-termination complaint of discrimination could reasonably be expected to embrace an inquiry into whether a subsequent termination was the result of retaliation based on that complaint. But in this case, where Brown complained of discrimination (but not retaliation) for the first time *after* he was fired, there was no reason for the agency to investigate whether he was punished for engaging in protected activity. The only form of protected activity brought to its attention was the complaint itself, and since Brown had already been terminated when the complaint was filed, Borwn's failure to allege retaliation is fatal to that claim. Accordingly,

---

[4] The administrative complaint also included an allegation of discrimination based on the Plaintiff's record of conviction. That claim is not at issue here. Brown was hired by CCCS shortly after his criminal record was revealed to CCCS. (ECF No. 14, Ex. B at 2).

Brown's retaliation claim must be dismissed because he failed to exhaust his administrative remedies. *See Butts v. City of New York Dep't of Hous. Pres. & Dev't.*, 990 F.2d 1397 (2d Cir. 1993).

### 2. *The Merits of the Claims*

Even if this Court could entertain Brown's retaliation claim, he has failed to allege sufficient plausible facts to support it. A claim for retaliation under Title VII requires plaintiff to plead facts that would tend to show that there is a causal connection between protected activity and the alleged wrongful conduct complained of. *See Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007). No such facts are alleged here; indeed, Brown has never asserted that he complained of race or sex discrimination prior to his termination..

Brown's conclusory statement that he was retaliated against by being told his services were no longer needed falls short of the pleading standards articulated in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 663. Brown was granted leave to amend the pleadings to correct these deficiencies, which were also present in his initial complaint. (ECF No. 4). He has failed to do so, and therefore his retaliation claim is dismissed.

## CONCLUSION

For the foregoing reasons, the CCCS' motion to dismiss Brown's amended complaint is granted, with prejudice and the Clerk is directed to close the case.

So ordered.


John Gleeson, U.S.D.J.

Dated: August 28, 2013
      Brooklyn, New York